under the impression that all of our attorneys are here. We're going to start with, uh, 236632. That is Hunter versus Annucci. And am I correct, Miss Murray, that you've reserved two minutes? Yes, that's correct, Your Honor. Okay. Yep. And I can already tell I'm gonna have I'm gonna be straining to hear you and you want me to be able to focus rather than focusing on trying to hear you. So thank you. That sounds great. Please. Um, may it please the court, Jayna and Murray, for Mr. Hunter. Um, under New York law, criminal defendants are granted a valued and important right. That is the right to testify before the grand jury. So can you tell me, I'm interested in hearing your perspective on what Mechanic, Lopez and Asaldana stand for and what each of them do to the doctrine? Right. So, Your Honor, Asaldana is the district court case upon which Judge Brody relied for the finding that, uh, the defendant has a due process and equal protection right in the exercise of this statutory right to testify in the grand jury. And obviously this is a deficiency. The denial of the right to testify in the grand jury is a deficiency. But Lopez addressed specific deficiencies. Deficiencies in the presentation of evidence. Your Honor, I might just want to raise the, oh, sorry. Usually I'm not raising it, so. Um, Lopez involved several specific deficiencies. The failure to develop exculpatory evidence, the presentation of prejudicial evidence, and an error in explaining the law. These were all deficiencies that went ultimately to the finding of probable cause and were deemed by the district court to be deficiencies. So, um, the issue of testifying in the grand jury. Okay, I'm sorry. And so tell me what you think Mechanic stands for. Because basically I think we're having a debate over how broad or how narrow each of those, and I need to hear your precise position on each of those. So what do you think Mechanic stands for? Mechanic stands for the issue that, uh, improprieties in the presentation of evidence in the grand jury are not recognizable on federal habeas review. Okay. So you, so tell me how you would put them all together in terms of what the doctrine does. I would say that the test, that the right to testify in the grand jury is a very different beast. Because it doesn't just go to the issue of probable cause. It goes to the grand jury's supervisory power over the prosecution's exercise of its charging decisions. The grand jury could well find there is probable cause to indict. We would find beyond a reasonable doubt that this individual is guilty of the crime. But we are not. It seems to me that there is an underlying this, because he was well advised not to appear. A cross-examination of a person with a record like his would have been, you know, devastating. No? Well, Judge Sack, I'm not sure I heard you completely there. Are you saying that he would have been well advised or that he was well advised? I'm saying he would have been well advised, but not necessarily denying, asserting that he was well advised. Your Honor, I would respectfully disagree that he's well advised based on that particular record. It's a relatively minor record. It is one that is basically nonviolent. The one charge of assault is a B misdemeanor charge. Otherwise, it's nonviolent charges. And on the counterbalance side of it, you have a veteran, an honorably discharged veteran. You have a college educated with a master's degree. And you have a viable self-defense claim. And indeed, a self-defense claim that would be visually available to the grand jury at the time he had been given an opportunity to testify. He had an opportunity to testify at the trial two years later, Your Honor. It's not the same. I didn't say it was the same, but he did have the opportunity. He had the opportunity, which he did not exercise. Which he did not avail himself of. Correct. So can I, I want to get, I just want to make sure, the part that I think is the most up for our job is again, the Lopez, McKinnock, and Saldana kind of interplay. How would you respond to the suggestion that these were very broad? That they should be taken together as a, as holding that any error in a grand jury proceeding, except for race, which was, you know, you had that prominent footnote. And that would be a harmless error in the habeas context. Why would that be wrong? Well, Your Honor, I'm not disputing that harm, that this court has a panel in Lopez. This court has previously decided harmless error analysis applies. And so I have a separate argument on harmless error. The question is whether it's cognizable in the first place. And I submit that even under Lopez, our particular claim about the denial of the right to testify is cognizable, because it's not in the same category of errors. So you have two arguments, as I understand it. Not only is it in a different category, those are not broad. Those do not say per se errors. They only say certain kinds of errors are not cognizable. And we should not be interpreting even sometimes sweeping language in each of them as being that broad. Is that what the position is? Now, how does harmless error analysis then fit into your theory? Well, Your Honor, Lopez did apply harmless error analysis, and so did Saldana on this issue. I mean, Saldana, this court in Saldana did not reach the issue of the cognizability of the grand jury error by applying a harmless error standard. So once we are bound by that finding in Saldana that there's a harmless error standard, Your Honor, I would submit that the harmless error standard nonetheless in this case tips in the balance of the defendant, because we are dealing with a self-defense claim. And that is the archetypal case that leads to no true bills or indictment on lower charges in grand juries in New York City. So if I can move on to another topic, how would you define arbitrary or unfair? Like, what is the standard for when the deprivation is actually arbitrary or unfair? Well, the standard of arbitrariness would be that James Hunter is the only defendant that I can find in the casebooks who has been denied his right to testify. Well, that can't be the definition of arbitrary. Right. I mean, like, what, like... Arbitrary is where there is no completely, the denial of the right to testify has no bearing on the statute, does not comply with the statute. Well, you don't actually dispute, though. And again, I hope you appreciate, I'm not actually critiquing or arguing against you. I'm trying to think about the layers, because we've got to get the law right. I don't think when I read your papers that you disputed that there is a particular provision of the New York statute that allow a lawyer to deny or to decline to have their client testify. So you at least concede there, and your dispute is whether or not the attorney should have done that, given your client's wishes. Is that correct? Two issues, Your Honor. With respect to the lawyer withdrawing the notice to testify. If the lawyer is going to be given that right, and the New York State Court of Appeals has given lawyers the right to withdraw the notice, the grand jury notice, over their client's wishes, there has to be a strategy. Okay, I'm sorry. So you, I think, just said two points, only one of which I wanted to focus on. But let's make sure we get them both clear for the transcript. That way we can go back when we're trying to examine our decision. The first, you're agreeing that a person, that an attorney can withdraw their client's ability to testify. And the second is they can do it without permission if they have a good reason. Is that right? If they have a good reason, and that reason should be analyzed on the record, objectively, by the court. Okay, so one of the questions that I have, then, is even if we decided, or even if a court decided that it wasn't prudent for the attorney to withdraw their right, how is that the state arbitrarily depriving somebody? Because they were given a notice by an attorney that you've agreed has the right to do so, to pull it. So how does that meet any definition of arbitrary? Well, the state got a notice before the filing of the indictment that the defendant still wished to testify. So now, after the receipt of that notice from the lawyer, which, at the time, they could rely on believing that it was a statement from the client, they now were on notice that it was not the statement of the client. It was not the desire of the client. So therefore, it would be arbitrary to reject that. They now have a pro se filing from the client. Okay, what would be the best case, you think, for supporting that particular proposition? Because it seems to me incorrect is not the same thing as arbitrary, right? I mean, that, just as a general matter, can be true in at least some circumstances. There would be some circumstances in which incorrect would be arbitrary. But if the state apparatus had reason to believe that there was a good faith withdrawal, because the attorney did, I don't see yet, from what you are telling me, why we should find that to be arbitrary. Your Honor, on its own, they could rely on it. But when you add to it that prior to the filing of the indictment, there was contemporaneous provision to the prosecutor, notice that the client repudiated that. That the client didn't agree with it, and the client was now invoking, once again, his right to testify in a timely manner prior to the filing of the indictment. And so we've reset at that point. So leaving aside the power of his prior lawyer to withdraw the grand jury notice, I submit that my client's repudiation of that in writing was a resetting of his right to testify before the grand jury. And the law is clear. Once you have given them notice prior to the filing, that must be scrupulously honored. And it was not honored by the prosecutor, and it was not honored by the trial court. Thank you. You've got two minutes. Your client is not now incarcerated? Not now incarcerated, Your Honor, yes. And if I may ask you to start, sir, with the same question I asked about Lopez, Mekinick, and Saldana, what you think each of them stand for. Well, should I introduce myself? Sure, whatever you want, sir. In answer to your question about Mekinick and Lopez, Saldana was a district court decision. It got overturned on appeal, on procedural grounds. But then Lopez said, we didn't reach that question that was the underlying merits question in Saldana, but we're going to reach it now in Lopez. And this court in Lopez said that a claim about a failure to develop exculpatory evidence by the prosecutor, the presentation of prejudicial evidence, and error in explaining the law is not cognizable on federal habeas review, simply because if there's a pedigree conviction, then it renders it, per se, harmless. Now, my colleague wants to say that that doesn't encompass where the defendant wants to testify. But remember, a defendant does not have a right under the federal constitution to a grand jury proceeding altogether. And even in federal court, a defendant does not have a right to testify in the grand jury. In fact, not only does it not have a constitutional right to testify, it doesn't have a right at all to testify in the grand jury. So the question before this court is only whether or not under state law that allows for a defendant to present exculpatory evidence in the form of testifying before the grand jury, which is very different from like the testimony at trial, which is a constitutional right. Is that the distinction you're making for us? That is, that it is not a constitutional right and therefore cannot be, quote, cured, quote, by this court on habeas? It's cured by the jury, the pedigree conviction, because it's akin to exculpatory evidence, the presentation of exculpatory evidence, which, as Courtney Lopez has already said, is not cognizable in federal court, such a claim. I would point out that there are several district court cases that cite to an unpublished decision from this court where this court said that the same rule applies to where a defendant is denied the right to testify before the grand jury. I didn't cite to it in my brief because simply under the rules, I can't cite to it. But if you look at those district court cases, you can see that. No, I'm saying to the district court cases that cite to the decision. So if it's not permitted, I withdraw that. But if it is permitted to cite to those district court cases, that in turn cites to it. Well, I mean, I think the main point is we're trying to get the law and the reasoning right. So can you tell me how we understand Lopez that in relation to, I'm sorry, Mekanek that? So Mekanek just says that errors that occur in the grand jury are rendered harmless by a. Okay, so you just said. I mean, that's part of the issue. You just said errors, and that means errors. That means everything. So you don't read Mekanek as applying to federal rule criminal procedure 60 errors. You read it as everything. Well, that's what Lopez does, saying that it's the fortiority that if a federal defendant does not have this, it's rendered harmless by this conviction after trial, then the same thing would apply to state prisoners. So you think what Lopez does is extend Mekanek to the habeas? Is that correct? And they say so. If federal grand jury rights, this is a quote. If federal grand jury rights are not recognizable and direct appeal, we are rendered harmless by a petted jury. Similar claims concerning a state grand jury proceeding are a fortiority. Well, part of the challenge that I'm having is whether or not there was some sloppy language in Mekanek that suggested a broader. I mean, they're definitely the words that you said. There's no question about that. But they were looking at a very specific kind of error. And the concurrences and the dissents did not assume everything under the sun. They assumed something very narrow. And I guess my question, and I read your briefs, to not requiring the big view in order to prevail. Is that correct? Like you would win, or you argue that you could win on the idea of it being a smaller sufficiency of the evidence standard like what we had in Lopez. Absolutely. Regardless of which harmless error analysis this Court were to apply, if it was a per se harmless error that the petted jury conviction renders it unreviewable, or the traditional harmless error analysis that in this case the defendant would not likely have prevailed and didn't even make a proffer of what it was that he would have testified when he moved to withdraw, when he moved to dismiss the indictment in state court on the grounds that he had been denied his right, he failed to make the proffer. And that's what the state court said. And moreover, there was no error here. Because the decision whether or not to allow a defendant to testify in the grand jury belongs to the attorney. It does not belong to the defendant. And the same state law that gives the defendant the right to testify gives the choice about whether the defendant can testify to the attorney. It doesn't matter whether the defendant says, I want to testify. It's irrelevant. It's the attorney's choice. So if the defendant is screaming at the top of his lungs, I want to testify, and the attorney says... That's a New York Court of Appeals decision cited in the brief. And so that's the law. It doesn't matter what the defendant says. And in this case, the defense attorney had very good reason. The defendant was going to testify, according to what he's saying now in this court, that he would have testified that he was acting in self-defense. But in order to testify that you're acting in self-defense, you have to first admit that you did the stabbing. Now, early in the case, an attorney may not want the defendant to say that he committed the stabbing. He might find out through discovery that there's weakness in the people's evidence and that the eyewitness was nearly blind, and so may not be able to identify the defendant at all. And now the defendant has admitted that he was, in fact, the defendant. And so that can be, under New York rules, can be used at trial against the defendant, even in the people's prima facie case, because it's a statement that the defendant made. So what is your... Could you articulate... Assuming we disagree with you. Assuming we think that there are some limits on when the attorney can withdraw or decline to allow a criminal defendant to testify and that Lopez isn't that broad, can you speak to the arbitrariness? Why would, in this circumstance, would you find it not arbitrary that the person wasn't able to testify? Because the question before this court isn't what the prosecutor did. The question before this court is what the state court did. And the state court did not act arbitrarily because the judge said that the defendant failed to make a proffer about what it is that he would have said. The court took in recognition that the defendant had a long criminal history, which included crimes that went to his honesty, crimes about identity theft, crimes about forgery. And so there was good reason why to believe that it would be harmless if the defendant had testified. It wouldn't have helped him because he would have to persuade 12 out of 23 or 12 out of 16 grand jurors that there's no reason to even indict him. There's no reasonable cause to indict him. And that's a very difficult standard. It's, you know, Judge Woffler said you can indict a ham sandwich in New York. It's a very difficult standard for the defendant to prevail. And so the defendant didn't make any showing in this case. He didn't even make a proffer as to what it is that he would have testified. And there was very good reason not to allow the defendant to testify. There are no questions. Can you talk about Strickland? I'm sorry, the ineffective assistance of counsel claims? Of appellate counsel? So in this case, there was good reason for the attorney not to raise it on appeal. First of all, the defendant did raise it in a pro se supplemental brief and raised it extensively. And it was argued. And the Court rejected it on its merits. And on this appeal, the defendant doesn't show anything that was deficient in that argument or any other arguments that counsel, that defendant should have raised or that counsel for the defendant on appeal should have raised. It was a perfectly good brief. Your Honors, I assume have the brief. You can look at the pro se supplemental brief. It was perfectly fine. And the appellate division rejected it on its merits. There's no reason to believe that had counsel raised it, it would have helped. So under the prejudice prong of Strickland, it's clear that that would have been harmless because that's, the outcome was the same. The defendant raised it. The Court rejected it on its merits. And it was a perfectly good brief. There's nothing deficient about that brief. And it was a good decision not to raise it because the defendant would have had to show that the trial court was wrong. But the trial court was right. The defendant failed to make a proffer of what it would have testified. There was good reason for the attorney not to allow the defendant to testify. And it was the attorney's prerogative not to allow the defendant to testify. And so it was a good decision. So can you articulate for us what you think the standard is for reviewing ineffective assistive counsel via Strickland on ad habeas and whether or not it is different than in another setting? Well, generally, it is somewhat different because there's a layer of deference that has to be given under AEDPA to the state court decision. So it's not just whether or not it was harmless, but whether or not a state court could find it harmless. And the state court did find it harmless. And so this court should give deference. So now you have three layers of deference. The deference of the trial attorney who says, I don't want the defendant to testify. And that's his prerogative absent some failure of having any objective reason. And here there was plenty of objective reason for the attorney not to want the defendant to testify. Then the appellate attorney's decision to choose among claims to raise on appeal what claims to raise. And so that's a layer of deference. And then the third layer of deference, the appellate division's rejection. And that has to get deference from this court. And so this court is faced with three layers of deference that the first defendant has to overcome in order to prevail in this court. So that's how I think Strickland is different from the ordinary federal defendant, especially in this case. Thank you. Ms. Murray, you've got two minutes. Thank you, Your Honors. I want to address that issue of indicting the ham sandwich. There is data about the indictments at the federal level. In 2010, out of 162,000 in federal indictments, the grand juries declined to indict in 11. There is no right for the defendant to testify in the federal grand jury. However, in 2013, the Washington Post article said that there were 5.1% no true bills in Staten Island in that year. And statewide, 4.3%. And I would submit that more than likely that 4.3% and that 5% statistics included... I'm sorry, and this all goes to what you would argue is the harmless error prong? Yeah, it will go to actually the profoundness of the right to testify. And why this is separated from the fairly technical procedural violation in the grand jury in McCannick and the evidentiary presentation issues in Lopez. The issue about testifying in the grand jury is a different beast. It's a different matter. It's not quite the right to testify at trial before the pettit jury, but it's close. It is a significant right that can result in a no true bill. Or it can result in an indictment on a lower charge. And here there was a real possibility of an indictment on a lower charge. Maybe not a no true bill, but a lower charge because now you're going to have a self defense claim. Can you articulate for me, because so many of the other cases found that people are relying on found that it was not cognizable. Let's say that we think that you have a claim that is not foreclosed by Lopez or McCannick or Saldana, all of which did not go well for the criminal dependent. What do we do then? Do we examine it under harmless error? Your Honor, I didn't brief the issue of not applying harmless error because Saldana did apply harmless error. You can't make new law for us. What you think we are supposed to do if we say that at least the claim is cognizable and now we need to figure out if there's something to be done for your client. Your Honor, I believe a harmless error analysis here means that it's almost impossible to rewind and work out what would have happened if I went back to the district court for an opportunity for the district court to dismiss the indictment for a re-presentation. And on the harmless error point, I would simply say, yes, there's a criminal record here, and yes, there is an injury, but there's also injuries received by my client. I'm just curious, if the court to which it was returned held against you, that would be the end of the matter? If it was returned to the trial court for the indictment to be dismissed? And they don't. And they don't. Well, you'd be returning it with... Well, Your Honor, if his right to testify in the grand jury was violated and his constitutional rights were violated, then the appropriate outcome is to have the indictment dismissed and an opportunity for it to be re-presented. I mean, it would go back to the trial court with a direction to dismiss. So there will be no trial? The indictment will be dismissed with the opportunity to re-present. Thank you so much. Well argued. We will take this case under advisement.